UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEROME EDMONDS,

Plaintiff,

v.

26-CV–6060–MAV
ORDER

PRIMECARE MEDICAL, INC., MONROE COUNTY SHERIFF TODD K. BAXTER, MONROE COUNTY UNDERSHERIFF KOREY BROWN, MARAH SCOTT, and SERGEANT PRINCE,

Defendants.[1]

---

## INTRODUCTION

*Pro se* Plaintiff Jerome Edmonds filed this action seeking relief under 42 U.S.C. § 1983 while he was incarcerated at Monroe County Jail. ECF No. 1. Plaintiff alleged that he has been forced to sleep on deflated mattresses and metal bed frames, causing nerve damage and other injuries. The Court previously granted Plaintiff's motion for leave to proceed *in forma pauperis*. ECF No. 5 at 1 ("the initial screening order").[2]

In the initial screening order, the Court dismissed the claims against Monroe County Jail without leave to amend, and dismissed the remainder of Plaintiff's claims

---

[1] The Clerk of Court is directed to update the caption as reflected above.

[2] The Court presumes familiarity with the initial screening order and references it only as necessary.

under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend. *Id.* at 1–2.

Plaintiff timely filed an amended complaint, ECF No. 9,[3] which the Court now screens under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b). Plaintiff also filed a letter with a request for appointment of counsel. ECF No. 8.

For the reasons set forth below, the following claims may proceed to service against the defendants in their individual capacities: Plaintiff's Fourteenth Amendment conditions of confinement claim against Baxter, Brown, Scott, and Prince; and Plaintiff's Fourteenth Amendment deliberate indifference claim against Baxter, Brown, and Scott. The remainder of the amended complaint is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), without leave to amend. Lastly, Plaintiff's request for appointment of counsel (ECF No. 8) is denied without prejudice.

## BACKGROUND

The following background is drawn from Plaintiff's pro se complaint. ECF No. 1. The Court has accepted all factual allegations as true, and draws all reasonable inferences in Plaintiff's favor. *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

Plaintiff alleges that while confined at Monroe County Jail as a pretrial detainee,[4] he was "forced to sleep uncomfortably in pain . . . on a deflated mat on a

[3] Plaintiff filed two amended complaints, but they appear to be identical. ECF Nos. 7, 9. Accordingly, the Court will treat the latter, ECF No. 9, as the operative complaint.

[4] Plaintiff indicated, in a submission dated June 14, 2026, that he was no longer housed in Monroe County Jail but instead was confined at Upstate Correctional Facility. ECF No. 9-2.

metal bedframe" for over seven months, to the point that he developed chronic nerve damage and now requires surgery. ECF No. 9 at 3–4.

Plaintiff further alleges that beginning on or about August 2, 2025, he began feeling pain but "waited a little while longer hoping that the pain [would] go away." *Id.* at 5. The pain got worse, and Plaintiff began speaking up about it in late September/early October. *Id.* Plaintiff "complained about [the deflated mat] since the first day [he] woke up very sore[.]" *Id.*

Plaintiff states that Sheriff Todd Baxter ("Baxter"), Undersheriff Korey Brown ("Brown"), and Marah Scott ("Scott") have done nothing to accommodate Plaintiff's issues or to prevent his injury from happening. *Id.* at 4. The grievance officer, Sergeant Prince ("Prince"), allegedly told Plaintiff to "ask PrimeCare Medical for an extra mat" but Plaintiff's request "was denied[.]" *Id.* at 4, 5, 7. Plaintiff also requested but was denied a new replacement mat "in disbelief of [Plaintiff's] pain[.]" *Id.* at 5. After these requests were denied by PrimeCare, Plaintiff returned to Prince who denied Plaintiff the extra mat, which was "what she told [him] to ask for[.]" *Id.* at 7. Plaintiff "complained over and over about [his] pain and suffering" to Baxter, Brown, and Scott, who have instead "undermin[]ed" him. *Id.* at 4.

Plaintiff alleges he "did not receive the help [he] needed until [his] injury became worse" and his pain was "brushed off to the side." *Id.* It took three to four months after Plaintiff started complaining for Plaintiff to be treated with physical therapy, where he was told "they can't do nothing" because of "how bad and serious

[his] condition was" at that point. *Id.* at 5. Plaintiff was never provided pillows, a proper head rest, or anything to support his neck or head. *Id.* at 4, 5.

Plaintiff states that he "constantly" feels the pinching of his nerves from his neck down and throughout his whole body. *Id.* at 3, 5. Plaintiff "could possibly be" paralyzed from this injury. *Id.* at 5. Plaintiff has no feeling in his hands and his balance is off. *Id.* Plaintiff is "uncomfortable, stressed, emotional, depressed, hurt[,] and exhausted." *Id.* Plaintiff never had any of these issues until he was in Monroe County Jail. *Id.* at 4. Plaintiff requests $5,000,000.00 for the seven months of experiencing the pain of nerve damage. *Id.* at 5.

## LEGAL STANDARDS

### I. Review of the Amended Complaint

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). "[A]n opportunity to amend is not

required where the plaintiff has already been afforded the opportunity to amend." *Bivona v. McLean*, No. 9:19-CV-0303(MAD)(TWD), 2019 WL 2250553, at *5 (N.D.N.Y. May 24, 2019) (citing cases); *Cancel v. New York City Hum. Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) ("[T]he district court had already permitted [the plaintiff] to amend his complaint once, and nothing in his amended complaint suggested that he would be able to state a valid . . . claim if he were granted leave to amend a second time. Therefore, granting [the Plaintiff] leave to amend his amended complaint as to these claims would have been futile."); *Cato v. Zweller*, No. 6:21-CV-6207 EAW, 2023 WL 8653857, at *2 (W.D.N.Y. Dec. 14, 2023) (dismissing the amended complaint with prejudice because it "does not remedy any of the pleading deficiencies identified in the Screening Order").

**II. Section 1983 Claims**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not

enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

## DISCUSSION

### I. Official Capacity and *Monell* Claims

#### A. Official Capacity Claims against Baxter and Brown

As the initial screening order explained, ECF No. 5 at 6-7, to the extent that Plaintiff sues Baxter and Brown in their official capacities, Plaintiff's claim is equivalent to a claim against Monroe County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Baines v. Masiello,* 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003). Plaintiff's official capacity claims against the individual defendants who are officials or employees of Monroe County are therefore considered to be redundant of his claims against Monroe County and accordingly will be dismissed. *See Beckwith v. Erie Cnty. Water Auth.*, 413 F. Supp. 2d 214, 224–25 (W.D.N.Y. 2005) ("A claim against a government official in his official capacity is merely another way of asserting a claim against the governmental entity that employs the official.") (citation omitted). The Court construes the official capacity claims against Baxter, Brown, and Prince as being asserted against the municipal entity itself—Monroe County.

As for suing Scott, a medical provider with PrimeCare, in her official capacity, such a claim is viewed as a claim against PrimeCare itself. *See Porter v. Primecare Med. Inc.*, No. 6:25-CV-6185-MAV, 2026 WL 2295247, at *2 n.4 (W.D.N.Y. Aug. 10, 2026) (dismissing the plaintiff's official capacity claims against medical providers employed by PrimeCare as "redundant of his claims against PrimeCare").

**B. *Monell* Claims**

As the initial screening order explained, ECF No. 5 at 7-8, a municipality cannot be held liable under § 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

An official policy or custom can be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 453 (E.D.N.Y. 2021) (citing cases).

Moreover, "[a] private entity such as PrimeCare, that contracts to provide medical services to a municipality, is considered a municipal defendant for purposes of [a municipal liability claim]." *James v. Monroe Cnty.*, No. 20-CV-7094 CJS, 2022

WL 17155831, at *11 (W.D.N.Y. Nov. 22, 2022) (collecting cases). Like municipal defendants, private employers are not liable under a *respondeat superior* theory for their employees' constitutional torts. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F. 2d 406, 408 (2d Cir. 1990). Instead, the plaintiff must plead and prove that some action pursuant to the private employer's official policy or custom caused a constitutional violation. *Id.*

Plaintiff does not plausibly allege that the alleged constitutional deprivations were caused by or occurred pursuant to an official custom or policy of Monroe County or PrimeCare. Thus, Plaintiff has failed to state a § 1983 claim against Monroe County or PrimeCare. The Court previously advised Plaintiff of the pleading requirements for a *Monell* claim and afforded him an opportunity to amend his complaint. Because he has still not stated a claim upon which relief could be granted and nothing suggests that he could do so, this claim is dismissed with prejudice. *See Cato*, 2023 WL 8653857, at *2.

## II. Fourteenth Amendment Claims

As the initial screening order explained, *see* ECF No. 5 at 8, because Plaintiff was a pretrial detainee, Plaintiff's allegations of deliberate indifference related to conditions of confinement and inadequate medical treatment are analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

## A. Conditions of Confinement

As the initial screening order explained, *see* ECF No. 5 at 9, the standard for a conditions of confinement claim by a pretrial detainee includes an objective component that considers the nature of the dangers created by the conditions alleged. *Darnell*, 849 F.3d at 30 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). The allegations supporting this component must "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the inmate's] health[.]" *Id.* (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "Thus, prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

There is also a subjective component that addresses whether a defendant possessed the requisite state of mind. Allegations supporting the subjective, or state of mind component of a Fourteenth Amendment claim must show "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Plaintiff alleges that he has been forced to sleep on deflated mattresses on metal bed frames that caused injuries, including nerve damage. ECF No. 9 at 3. For

initial review purposes, Plaintiff has sufficiently alleged that the lack of an adequate mattress created an unreasonable risk of serious damage to his health, causing him pain and leading to severe nerve damage and the need for surgery. *See Schmiege v. New York*, No. 21-CV-418-LJV, 2022 WL 16922123, at *9 (W.D.N.Y. Nov. 14, 2022) ("denying [the plaintiff] a mattress on which he can sleep without exacerbating his severe nerve damage is an 'unnecessary . . . infliction of pain,' making that nerve damage a serious medical condition" for Eighth Amendment conditions of confinement claim); *cf. DelaCruz v. City of New York*, No. 15-CV-3030, 2015 WL 2399346, at *2 (S.D.N.Y. May 19, 2015) (in the context of an Eighth Amendment claim, plaintiff did not satisfy the objective element when his complaint did not "indicate how the prison bedding has caused or exacerbated his claimed injuries").

At this initial stage, and based on a liberal reading of the amended complaint, Plaintiff has alleged sufficient facts that Baxter, Brown, and Scott were aware of the sleeping conditions and recklessly failed to act to mitigate the risk to Plaintiff's health. Plaintiff's Fourteenth Amendment conditions of confinement claim may proceed to service against these defendants in their individual capacities.[5]

Moreover, the Court liberally construes the amended complaint to assert a conditions of confinement claim against Sergeant Prince. ECF No. 9 at 5, 7. Specifically, Plaintiff alleges that Prince told him to request double mats from

[5] Permitting this or any claim to proceed to service does not immunize it from a dismissal or summary judgment motion. *See Jones v. Sullivan*, No. 9:19-CV-0025(BKS)(CFH), 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6)." (citing *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 434–35 (N.D.N.Y. 2009)).

PrimeCare, then she later denied his request directly. *Id.* at 7. At this initial stage, and based on a liberal reading of the complaint, this claim may proceed to service against Prince in her individual capacity as well.[6]

**B. Deliberate Indifference- Medical Treatment**

As the initial screening order explained, ECF No. 5 at 10–11, similar to a conditions of confinement claim, a Fourteenth Amendment medical indifference claim requires a pretrial detainee to plausibly allege two elements: an objective prong demonstrating the existence of a "serious medical need," and a "*mens rea*" prong, that defendants "acted with deliberate indifference to such needs." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); and then citing *Darnell*, 849 F.3d at 29).

The serious medical need element "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* While there is "no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), courts consider factors such as (1) "whether a reasonable doctor or patient would find the injury important and worthy of treatment," (2) "whether the medical condition significantly affects an individual's daily activities," and (3) "whether the illness or

---

[6] "[C]ourts in this Circuit have found *pro se* complaints to sufficiently plead claims against defendants who are not even named in the caption or the list of defendants when there are adequate factual allegations in the body of the complaints to establish that the plaintiff intended them as defendants." *Burris v. Nassau Cnty. Dist. Att'y*, No. 14CV5540PKCARL, 2023 WL 6450398, at *9 (E.D.N.Y. Sept. 30, 2023) (collecting cases construing *pro se* complaints as asserting claims against parties not named in captions).

injury inflicts chronic and substantial pain," *Charles*, 925 F.3d at 86 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Under the *mens rea* prong, "something more than mere negligence" is necessary. *Id.* at 87 (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). Deliberate indifference must be "shown by something akin to recklessness" but "does not require proof of a malicious or callous state of mind." *Id.* at 86 (quoting *Darnell*, 849 F.3d at 33–34). Thus, a plaintiff can "allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87.

Plaintiff has alleged sufficient facts in the amended complaint to demonstrate that his medical condition—chronic pain and nerve damage—developed into a serious medical need during the seven-plus months alleged. *See, e.g.*, *Jahad v. Holder*, No. 19-CV-4066 (NSR), 2021 WL 3855445, at *6 (S.D.N.Y. Aug. 26, 2021) ("[S]erious physical pain over an extended period of time may be sufficiently serious where medical care has been deprived.") (quotation marks and citation omitted); *cf. Medina v. Barrett*, No. 14-CV-6377-FPG, 2018 WL 1383232, at *6 (W.D.N.Y. Mar. 19, 2018) (nerve damage is insufficient when experienced over four weeks to satisfy the objective prong of Eighth Amendment analysis.). These include additional allegations regarding his pain, his lack of feeling in his hands, and deterioration of his balance. ECF No. 9 at 5.

Plaintiff also has alleged facts, at this initial review stage, to suggest that Baxter, Brown, and Scott knew or should have known that failing to provide the proper bedding and/or medical treatment would pose a substantial risk to Plaintiff's health. Plaintiff alleges he consistently complained to these three defendants about his pain from the beginning, but they ignored him "over and over" and even "undermined" his efforts for better treatment and sleeping conditions. *Id.* at 4, 5.[7]

Plaintiff's deliberate indifference claim based on medical care may proceed to service against Baxter, Brown, and Scott in their individual capacities.

## III. Motion for Appointment of Counsel

Plaintiff filed a letter stating that he no longer wishes to continue his case *pro se* and needs a lawyer but is unsure how to proceed. ECF No. 8. The Court interprets this letter as a request for appointment of counsel.

There is no constitutional right to appointed counsel in civil cases. Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The assignment of counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). In determining whether to assign counsel, courts must "first determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see Cooper*

[7] Because Prince is not included in these allegations, or discussions of Plaintiff's medical treatment or the delay in providing physical therapy, the Court does not read this claim to be asserted against Prince.

*v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989) (describing the threshold showing to be "some likelihood of merit").

If this threshold is met, courts consider the following factors in determining whether appointment of counsel is warranted:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61–62.

While some of Plaintiff's claims are proceeding to service, the Court cannot determine at this time whether those claims are likely to be of substance. The Court also finds that the other *Hodge* factors weigh against appointment of counsel at this time, including that the issues do not appear to be complex and Plaintiff has been able to present his claims clearly thus far. At this stage, the Court does not find any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Plaintiff's motion for appointment of counsel is denied without prejudice as premature. As Plaintiff's case progresses, Plaintiff may renew his request for appointment of counsel, if appropriate.

## CONCLUSION

For the reasons above, Plaintiff's Fourteenth Amendment conditions of confinement claim may proceed to service against Baxter, Brown, Scott, and Prince in their individual capacities; and Plaintiff's Fourteenth Amendment deliberate indifference claim may proceed to service against Baxter, Brown, and Scott in their

individual capacities. The remainder of the amended complaint is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), without leave to amend.

## ORDER

IT HEREBY IS ORDERED that the Clerk of Court is directed to update the caption as reflected above; and it is further

ORDERED that Plaintiff's request for appointment of counsel (ECF No. 8) is denied without prejudice; and it is further

ORDERED that Plaintiff's Fourteenth Amendment conditions of confinement claim may proceed to service against Baxter, Brown, Scott, and Prince in their individual capacities; and it is further

ORDERED that Plaintiff's Fourteenth Amendment deliberate indifference claim may proceed to service against Baxter, Brown, and Scott in their individual capacities; and it is further

ORDERED that the remainder of the amended complaint is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), without leave to amend, and the Clerk of Court is directed to terminate PrimeCare and Monroe County as defendants; and it is further

ORDERED the Clerk of Court shall cause the United States Marshals Service to serve copies of the summons, the amended complaint (ECF No. 9), and this order upon defendants Baxter, Brown, Scott, and Prince without Plaintiff's payment

therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the Monroe County Attorney is requested to ascertain the full name, with correct spelling, and last known service address of defendants Baxter, Brown, Scott, and Prince within 30 days of the date of this Order. The Monroe County Attorney need not undertake to defend or indemnify these individuals at this time. Rather, this Order merely provides a means by which Plaintiff may name and properly serve these defendants, as instructed by the Second Circuit in *Valentin*. The Monroe County Attorney shall produce the information specified above within 30 days of the date of this Decision and Order by mail to the *Pro Se* Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202.

Upon receipt of this information, the Clerk of Court shall amend the caption of this action to reflect the full names of these defendants, summonses shall issue, and the Court directs service on defendants Baxter, Brown, Scott, and Prince, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor. Should the *Valentin* response return personally identifiable information such as a home address, that contact information shall be given to the Marshals Service solely for the purpose of effecting service; this information will otherwise remain confidential; and it is further

ORDERED that the Clerk of Court shall forward a copy of this Order and the amended complaint (ECF No. 9) by email to Monroe County Deputy County Attorney Adam Clark, at adamclark@monroecounty.gov; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants shall answer or respond to the remaining claims of the amended complaint (ECF No. 9); and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated: November 2, 2026
Rochester, New York

Meredith Vacca

HON. MEREDITH A. VACCA
United States District Judge